**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STEVE D'ALLESANDRO, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **No. 07 C 4975** |
| | ) | |
| **JAMES BRUMBAUGH, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment
and Plaintiffs' partial motion for summary judgment. For the reasons stated below,
we grant in part and deny in part Defendants' motion for summary judgment and we
grant in part and deny in part Plaintiffs' partial motion for summary judgment.

**BACKGROUND**

Plaintiffs allege that in September 2006, Plaintiff Tyler D'Allesandro
("Tyler") was 12 years old and was enrolled in the 7th grade at Indian Trail Junior
High School ("Indian Trail"), which was overseen by Defendant Board of Education
of Addison Elementary School District 4 ("District"). According to Plaintiffs, on
Friday, September 22, 2006, Tyler left the school grounds after school, accompanied

by one of his friends ("Friend") as well as an 8th-grade student that Tyler did not know ("Eighth-grader"). Plaintiffs allege that Tyler opened his book bag and realized that he was carrying a utility knife ("Knife") that he put in his bag on a prior occasion when he made a trip to his father's workshop. According to Plaintiffs, Tyler showed the Knife to his Friend and let his Friend hold the Knife. The Eighth-grader allegedly then took the Knife from Tyler's Friend and ran at another student, brandishing the Knife in a menacing manner. The Eighth-grader allegedly then returned the Knife to Tyler and Tyler and Tyler's Friend both left the area.

Plaintiffs allege that on Monday, September 25, 2006, a parent of the student that the Eighth-grader allegedly menaced with the Knife complained to Defendant James Brumbaugh ("Brumbaugh"), the Dean of Students at Indian Trail. Brumbaugh then allegedly had Tyler removed from class and questioned Tyler about the incident. According to Plaintiffs, Brumbaugh then conferred with Defendant Terry Sliva ("Sliva"), the Building Principal for Indian Trail. Brumbaugh and Sliva allegedly decided that Brumbaugh should remove Tyler from school and drive Tyler to his home. Brumbaugh then drove Tyler to his residence ("Residence"). Once at Tyler's Residence, Brumbaugh allegedly ordered Tyler to let him into the Residence to search for the Knife. Brumbaugh allegedly found the Knife in the Residence and then took the Knife and Tyler back to school. Plaintiffs allege that neither of Tyler's parents, Plaintiff Steve D'Allesandro ("Steve") or Plaintiff Kelly D'Allesandro ("Kelly") were contacted or gave permission to Brumbaugh to take Tyler out of school and drive him to their Residence. Plaintiffs also contend that neither Steve

nor Kelly gave permission for the search of the Residence. In addition, Plaintiffs claim that Indian Trail never informed Steve or Kelly of the search of the Residence and that they only became aware of the search when Tyler returned home from school at the end of the school day and told them. Plaintiffs also claim that during the search of the Residence, Kelly was at home taking a shower, and that Brumbaugh was aware of that fact, but did not wait to speak with Kelly before leaving the Residence.

On September 27, 2006, Tyler was allegedly suspended for 10 days for the Knife incident. Steve and Kelly allegedly complained about the incident and the actions of the school officials. Plaintiffs allege that, in retaliation for the complaints, Defendant Donald Hendricks ("Hendricks"), the Superintendent of the School District, increased Tyler's punishment to a transfer from Indian Trail to an alternative educational program. Plaintiffs contend that Steve and Kelly continued to complain about the actions of the school officials and, in retaliation, Tyler's punishment was again increased, this time to a recommendation for expulsion.

In the complaint, Plaintiffs also make reference to an action in the Circuit Court of DuPage County. Plaintiffs contend that on February 20, 2007, the court in that matter determined that the search of their Residence allegedly orchestrated by Sliva and Brumbaugh violated Plaintiffs' Fourth Amendment rights.

Plaintiffs include in the complaint in the instant action individual and *Monell* First Amendment retaliation claims brought pursuant to 42 U.S.C. § 1983 ("Section 1983") (Count I), Section 1983 Fourth Amendment individual, conspiracy, and

*Monell* claims (Count II), Section 1983 due process individual, conspiracy, and *Monell* claims (Count III), state law false imprisonment individual and conspiracy claims (Count IV), and a state law indemnity claim (Count V). Defendants moved to dismiss all the claims.

On December 12, 2007, we granted Defendants' motion to dismiss the Fourth Amendment conspiracy claims (Count II), the due process conspiracy claims (Count III), and the false imprisonment conspiracy claims (Count IV). We denied the motion to dismiss the individual First Amendment retaliation claim (Count I), the individual Fourth Amendment claims (Count II), the individual due process claims (Count III), and the individual state law claims (Count IV). Finally, we denied the motion to dismiss the *Monell* claims (Counts I -III). Defendants move for summary judgment on the remaining claims and Plaintiffs move for partial summary judgment on Count II.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  This initial burden may be satisfied

by presenting specific evidence on a particular issue or by pointing out "an absence

of evidence to support the non-moving party's case."  *Id.* at 325.  Once the movant

has met this burden, the non-moving party cannot simply rest on the allegations in

the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set

forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P.

56(e).  A "genuine issue" in the context of a motion for summary judgment is not

simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of

material fact exists when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986);  *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).  The

court must consider the record as a whole, in a light most favorable to the non-

moving party, and draw all reasonable inferences that favor the non-moving party.

*Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th

Cir. 2000).

## DISCUSSION

I.  Individual Fourth Amendment Claims (Count II)

Both sides move for summary judgment on the individual Fourth Amendment

claims (Count II).  Plaintiffs argue that under clearly established law, Sliva and

Brumbaugh violated the Fourth Amendment with the search of the Residence and that Tyler could not have possessed even apparent authority to consent to such a search. Defendants argue that Plaintiffs cannot prevail on the individual Fourth Amendment claims since neither Sliva nor Brumbaugh conducted a search under the Fourth Amendment. Defendants also contend that regardless, Brumbaugh and Sliva are entitled to qualified immunity as to the individual Fourth Amendment claims.

A.  Whether Defendants Conducted a Search

Defendants argue that Brumbaugh did not conduct a search under the Fourth Amendment. The Fourth Amendment offers protection "against unreasonable searches and seizures." *United States v. Grogg*, 534 F.3d 807, 810 (7th Cir. 2008). The Fourth Amendment protections prevent "'unreasonable government intrusions into their legitimate expectations of privacy.'" *United States v. Place*, 462 U.S. 696, 706-07 (1983)(quoting *United States v. Chadwick*, 433 U.S. 1, 7 (1977)). It is undisputed that the alleged search occurred at Plaintiffs' Residence, where Plaintiffs had a legitimate expectation of privacy. (RP SF Par. 11).

Defendants argue that Brumbaugh did not search the Residence since he did not personally recover the Knife. Defendants contend that Brumbaugh stood inside the doorway of the Residence while Tyler retrieved the Knife. (DSJ Mem. 8). However, the undisputed evidence shows that the Knife was retrieved at the Residence under the supervision and control of Brumbaugh. Defendants admit that Brumbaugh placed Tyler in his car and drove Tyler to the Residence in order to

6

retrieve the Knife and the purpose was to get the Knife. (R PSF Par. 10-11).

Defendants admit that Brumbaugh entered the Residence. (R PSF Par. 14). It is also

undisputed that Tyler retrieved the Knife for Brumbaugh. (R PSF Par. 14). In

addition, it is undisputed that Tyler was taken from school during school hours and

was still under the supervision and control of Brumbaugh, and Tyler was

subsequently transported by Brumbaugh in his car back to school grounds. (R PSF

Par. 4-19). Thus, the undisputed evidence shows that Brumbaugh, an adult with

authority over Tyler, made Tyler, a child, go with him in his car to the Residence, for

the express purpose of recovering the Knife; that Brumbaugh entered the Residence

with Tyler; and that Tyler recovered the Knife and gave it to Brumbaugh on

Brumbaugh's instructions. The undisputed evidence thus shows that Brumbaugh

conducted a search of the Residence.

Sliva argues that she did not conduct a search since she was not present at the

Residence. The undisputed evidence shows that Sliva took part in the decision to

recover the Knife and instructed Brumbaugh to take Tyler in his car to the Residence

to recover the Knife. (R PSF Par. 9, 11). Also, it is undisputed that Sliva was aware

that Kelly may have been at the Residence before Brumbaugh left with Tyler for the

Residence. (R PSF Par. 9). However, Plaintiffs have not pointed to evidence that

shows that Sliva was involved in any manner with Brumbaugh's illegal search of the

Residence without the consent of Kelly. According to Plaintiffs' own version of the

facts, Sliva was not present at the Residence. (PSF Par. 11, 19). Thus, there is not

sufficient evidence that would indicate that Sliva directed or condoned the search of

the Residence without the permission of Kelly.  Sliva, having information that Kelly was at the Residence, could have had a reasonable expectation that a search would not have been conducted without Kelly's permission.  Thus, no reasonable trier of fact could find that Sliva participated in the illegal search of the Residence.

### B.  Apparent Authority

Defendants argue that they cannot be held liable for the search of the Residence since Tyler possessed apparent authority to consent to the search of the Residence.  The search of a residence without a warrant "is considered unreasonable per se and thus contrary to the Fourth Amendment."  *United States v. Henderson*, 536 F.3d 776, 786 (7th Cir. 2008).  However, a search without a warrant "does not violate the Fourth Amendment if a person possessing, or reasonably believed to possess, authority over the premises voluntarily consents to the search."  *United States v. Groves*, 530 F.3d 506, 509-10 (7th Cir. 2008).  Defendants argue that Tyler possessed apparent authority and cite to case law which indicates that co-inhabitants such as other family members and co-tenants can consent to a search.  (Ans. PSJ 8).  The Seventh Circuit has provided a list of factors to consider in deciding whether an individual has actual or apparent authority to consent to a search of a residence.  *Groves*, 530 F.3d at 509.  However, such considerations are not pertinent in light of the unique facts in the instant action.  None of the cases cited by Defendants involved a situation where the purported consenting party was a minor under the supervision and control of a government official.  The undisputed record indicates

that it was not Tyler that took Brumbaugh to the Residence to retrieve the Knife, but it was Brumbaugh who placed Tyler in his car and drove him to the Residence in order to retrieve the Knife, and during all this time, Tyler was "under defendant Brumbaugh's supervision and control. . . ."  (Ans. PSJ 5).

In addition, Defendants admit that Tyler's mother, Kelly was in the Residence at the time of the search and that Brumbaugh was aware of the fact, based on a statement by Tyler, before Brumbaugh took Tyler in his car to go to the Residence. (R PSF Par. 11).  Defendants also admit that upon entering the Residence, Brumbaugh confirmed that Kelly was in the shower, but that Brumbaugh never made any contact or had a communication with Kelly while in the Residence.  (R PSF Par. 15, 18).  None of the cases cited by Defendants involving apparent authority by co-inhabitants involved an authorization by a minor taken by a government official to a residence for search of the residence while the minor's parent was present in the residence and unaware of the presence of a government official inside the residence. No reasonable trier of fact could find that it was reasonable for Brumbaugh to conclude that Tyler had any authority to consent to a search of the Residence.  Tyler was under Brumbaugh's control and supervision and Tyler was following Brumbaugh's instructions.  Therefore, no reasonable trier of fact could conclude other than that Brumbaugh engaged in a warrantless search of the Residence, without obtaining appropriate consent, in violation of the Fourth Amendment.

C.  Reasonableness of Search

Defendants argue that the search of the Residence was reasonable because Tyler was under the supervision of Defendants and Defendants had authority as school officials to perform functions that protect the welfare of the schools. Defendants cite *Wallace by Wallace v. Batavia School Dist. 101*, 68 F.3d 1010, 1012 (7th Cir. 1995), which provides that "while in school or under the supervision of school authorities, public school students are in a unique constitutional position enjoying less than the full constitutional liberty protection afforded those persons not in school." *Id.* at 1012.  Defendants argue that since Tyler was under the supervision of Brumbaugh, Brumbaugh was accorded greater latitude to engage in conduct such as the search for the Knife.  However, Defendants' argument lacks merit since the undisputed record indicates there were no exigent circumstances that would have authorized Brumbaugh to take the child in his car to the child's home and search the Residence without the parents' consent.  Although Defendants argue that schools have an inherent authority to act to protect the safety of students in emergency situations, (DSJ mem. 11), Defendants admit that at the time that Brumbaugh took Tyler to the Residence, Tyler "did not pose any threat or risk of imminent or immediate harm to anyone."  (R PSF Par. 13).  Defendants have pointed to no evidence that would have provided any justification for Brumbaugh, acting in his official capacity, to go to the Residence with Tyler and conduct the search without consent from Tyler's parents.

The holding in *Wallace*, that is cited by Defendants, is also based upon the

holding in *New Jersey v. T.L.O.*, 469 U.S. 325 (1985). 68 F.3d at 1012. In *T.L.O.* the court stated that "[t]eachers and school administrators, it is said, act *in loco parentis* in their dealings with students: their authority is that of the parent, not the State, and is therefore not subject to the limits of the Fourth Amendment." *Id.* at 336. However, the concept of the school employee such as Brumbaugh, acting in place of Tyler's parents in the circumstances of this case is faulty since the Court in *T.L.O.* was assessing the standard for searches on school grounds and the need to protect the welfare of the students. *Id.* at 749 (referring to "[t]he special need for an immediate response to behavior that threatens either the safety of schoolchildren and teachers or the educational process"). In the instant action, the search was not conducted on school ground and Defendants have not pointed to any evidence that indicates that the illegal search of the Residence was necessary to protect the safety or welfare of the students. Defendants have not pointed to any evidence that would explain why Brumbaugh could not have contacted Tyler's parents later in the day to discuss the Knife incident that occurred the previous Friday instead of immediately taking Tyler in his car to the Residence to recover the Knife, illegally searching the Residence, and doing so without the permission of Kelly.

We also note that Defendants assert that "Brumbaugh went to plaintiffs' home to speak to Tyler's mother about the knife incident that occurred the previous Friday and in the context of that conversation to retrieve the knife and apprise her of the violation Tyler committed." (Ans. PSJ 6). The undisputed record however, does not in any way support such a conclusion. The undisputed facts show that Sliva and

Brumbaugh decided that Brumbaugh should take Tyler to the Residence to recover the Knife. (R PSF Par. 9). Defendants admit that Kelly was in the shower when Brumbaugh and Tyler entered the Residence. (R PSF Par. 15). There is no evidence that would offer any reason why Brumbaugh could not have waited outside the Residence until Kelly came out of the shower to speak with her. The undisputed evidence indicates that Tyler was under the control of Brumbaugh when Tyler retrieved the Knife on the instructions of Brumbaugh. (R PSF Par. 8-17). Defendants admit that Brumbaugh had no contact with Kelly at all during the illegal search. The undisputed evidence also shows that after Brumbaugh returned to school, he called Kelly and told her to come and get Tyler from school, but Brumbaugh never mentioned the search. (R PSF 19). Defendants have not pointed to sufficient evidence that would indicate that Brumbaugh intended to speak with Kelly about the search. Even if Brumbaugh intended to speak with Kelly, there is no justification for Brumbaugh to enter the Residence with the intent of searching without Kelly's consent.

Defendants also point to self-serving evidence put forth by Brumbaugh that he left the Residence without contacting Kelly because her shower was lasting too long and Brumbaugh needed to get back to school. (Ans. P SJ 7); (D SAF Par. 25). Brumbaugh also claims he meant to tell Kelly over the phone about the search, but that he was called away from the phone call and never had a chance to tell her. (D SAF Par. 27-28). However, such evidence offers nothing more than excuses as to why Brumbaugh did not properly obtain consent for before searching the Residence.

Such lame excuses do not absolve Brumbaugh from liability relating to the search of the Residence. A reasonable school official in Brumbaugh's position should have known that he could not perform the search of the Residence before he obtained the consent of Tyler's parents. As indicated above, Plaintiffs have not pointed to sufficient evidence that shows that Sliva took part in the search or had prior knowledge concerning Brumbaugh's illegal search of the Residence. Sliva, knowing that Kelly was at the Residence, reasonably had an expectation that Brumbaugh would obtain the consent of Kelly before searching the Residence. Plaintiffs have indicated that a juvenile court, during the prosecution of Tyler for weapons possession, has suppressed the Knife and Plaintiffs have argued that Defendants are estopped from contesting the reasonableness of the search. We have considered Plaintiffs' argument and, for the purposes of the instant motions, we have found that the search of the Residence was unreasonable. Thus, based on the above, no reasonable trier of fact could conclude other than that the search of the Residence by Brumbaugh was unreasonable and illegal.

### D. Qualified Immunity

Defendants also argue that Brumbaugh is entitled to qualified immunity on the Fourth Amendment claims. Government officials are protected by qualified immunity "in those situations where the law is not sufficiently clear for a reasonable official to have known that his actions were illegal." *Phelan v. Village of Lyons*, 531 F.3d 484, 487 (7th Cir. 2008). In determining whether an official is entitled to

13

qualified immunity, a court should consider: (1) whether "the facts alleged amount to a constitutional violation," and (2) whether "the right was clearly established at the time of the alleged violation." *Id.* As explained above, the record in this action indicates a violation of Plaintiffs' Fourth Amendment rights by Brumbaugh. The facts do not indicate that Sliva took part in such a constitutional violation relating to the search of the Residence.

Defendants also argue that the law was unclear in regards to the instant situation when Brumbaugh acted. Defendants argue that it is not clear in the law whether Tyler possessed apparent authority to consent to a search. However, as explained above, it is clear that a minor cannot consent to a search of a residence. It should have been apparent to any reasonable school official that the search of the Residence under the circumstances in this case was contrary to the law and was a violation of Plaintiffs' Fourth Amendment rights. Thus, we conclude that Brumbaugh is not entitled to qualified immunity. Therefore, we grant Plaintiffs' motion for summary judgment on the individual Fourth Amendment claim brought against Brumbaugh and deny Plaintiffs' motion for summary judgment on the individual Fourth Amendment claim brought against Sliva. We deny Defendants' motion for summary judgment on the individual Fourth Amendment claim brought against Brumbaugh and grant Defendants' motion as to the individual Fourth Amendment claim brought against Sliva.


II.  Individual First Amendment Retaliation Claim

Defendants move for summary judgment on the individual First Amendment retaliation claim. For a Section 1983 First Amendment retaliation claim, a plaintiff must establish that: (1) "the plaintiff's speech was constitutionally protected," and (2) "the defendant's actions were motivated by the plaintiff's constitutionally protected speech." *Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999). If the plaintiff is able to "demonstrate that his constitutionally protected speech was a substantial or motivating factor in the defendant's actions, the defendant is given the opportunity to demonstrate that it would have taken the same action in the absence of the plaintiff's exercise of his rights under the First Amendment." *Id.*

A. Acting Based on Public Interest

Defendants argue that the evidence shows that Plaintiffs were acting out of a purely private interest when they complained about the treatment of their son. Plaintiffs contend that although their son was taken out of school without their permission, their son was not harmed, for example, in a physical manner. Plaintiffs contend that their true concern in complaining about Brumbaugh's actions was to prevent Brumbaugh or other school officials from taking kids from school in the future without parents' knowledge and placing the children in harm. Plaintiffs point out that they continued to demand that Brumbaugh be disciplined and that they had nothing to gain personally by such discipline since the search was already concluded. (P SAF Par. 7, 10). The future conduct of school officials charged with the welfare of the children at Tyler's school would be a matter of public interest. Defendants

cite *Crowley v. McKinney*, 400 F.3d 965 (7th Cir. 2005), in which the Court found that parents did not have a constitutional right to criticize the treatment and supervision of a child at school. *Id.* at 973. However, unlike in *Crowley*, in the instant action, Plaintiffs have presented sufficient evidence to create a genuinely disputed issue as to whether Plaintiffs complained about Brumbaugh's conduct for purely private reasons or to speak out about matters of public concern. Defendants also argue that there is not sufficient evidence that shows that Hendricks acted out of an improper motivation when he increased Tyler's punishment. Plaintiffs, however, point to sufficient circumstantial evidence to create a genuinely disputed fact as to Hendricks' motivation. (Ans. DSJ 10). Thus, there is a genuinely disputed fact as to whether Hendricks violated Plaintiffs' First Amendment rights.

### B. Qualified Immunity

Defendants argue that Hendricks is entitled to qualified immunity on the First Amendment retaliation claim. As indicated above, the undisputed evidence indicates that a reasonable trier of fact could conclude that there was a constitutional violation in regard to Plaintiffs' First Amendment rights. Defendants also argue that the law was not sufficiently clear for Hendricks to understand that what he was doing violated Plaintiffs' constitutional rights. It is well established in the law that a public official cannot retaliate against an individual because the individual is exercising his First Amendment right to freedom of speech. *Connick v. Myers*, 461 U.S. 138, 142 (1983). Hendricks, as a school superintendent, also should have reasonably been

aware that Plaintiffs' complaints could have stemmed from an interest in public matters. Thus, Hendricks should have been aware that his conduct could be infringing upon Plaintiffs' First Amendment rights and Defendants have not established that Hendricks is entitled to qualified immunity on the individual First Amendment retaliation claim (Count I). Therefore, based on the above, we deny Defendants' motion for summary judgment on the individual First Amendment retaliation claim brought against Hendricks (Count I).

## III. Individual Due Process Claims (Count III)

Defendants move for summary judgment on the individual procedural and substantive due process claims (Count III).

### A. Individual Procedural Due Process Claims

Defendants move for summary judgment on the individual procedural due process claims relating to the interference with the parent-child relationship. In order to succeed on a procedural due process claim, a plaintiff must establish that: (1) the government has interfered with a "'life, liberty, or property' interest protectable under the fourteenth amendment," and (2) the "entity responsible for the alleged deprivation" failed to "institute[] constitutionally sufficient procedural protections." *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990).

Plaintiffs argue that Brumbaugh and Sliva removed Tyler from school "without the prior permission or consent from" Steve and/or Kelly, and that

Brumbaugh and Sliva violated Steve's and Kelly's due process rights by the "removal of [Tyler] from school without prior notice to" Steve and Kelly. (Compl. Par. 34, 36). Plaintiffs argue that there is sufficient evidence that show that Steve's and Kelly's constitutional rights to be accorded due process before being separated from their child is a valid basis for their procedural due process claims. The Due Process Clause protections prohibit the government from "separat[ing] the parent from the child, even temporarily, without according them due process of law to protect their liberty interests." *Russ v. Watts*, 414 F.3d 783, 786 (7th Cir. 2005)(stating that "[t]he due process clause requires that severances in the parent-child relationship caused by the state occur only with rigorous protections for the individual liberty interests at stake"). This interest protecting the parent-child relationship has been held to "'protect more than the custody dimension of the parent-child relationship' and . . . the protected relationship 'includes the parent's interest in the companionship, care, custody, and management of the child.'" *Id.* (quoting in part *Stanley v. Illinois,* 405 U.S. 645, 651 (1972)).

Defendants argue that there is not sufficient evidence to show that Brumbaugh acted out of an intention to interfere with the parent-child relationship between Tyler and his parents. However, Plaintiffs are not required to prove their case at the instant juncture. There is sufficient evidence for a reasonable trier of fact to conclude that Brumbaugh and Sliva did in fact intend to interfere with the parent-child relationship. The parties will have an opportunity at trial to present their evidence and the trier of fact can resolve the issue.

B.  Individual Substantive Due Process Claims

Defendants move for summary judgment on the individual substantive due process claims.  For a substantive due process claim a plaintiff must show that the government's conduct could be "'characterized as arbitrary, or conscience shocking, in a constitutional sense'" rather than actions that could "find 'reasonable justification in the service of a legitimate governmental objective. . . .'" *Christensen v. County of Boone, IL*, 483 F.3d 454, 462 (7th Cir. 2007)(quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 843 (1998)).  In the instant action, as indicated above, there is not sufficient evidence that shows that Sliva was involved in the improper conduct concerning the illegal search of the Residence.  There is sufficient evidence, however, concerning Brumbaugh's conduct as to the illegal search of the Residence.  There is also sufficient evidence as to Brumbaugh's and Sliva's conduct relating to the taking of Tyler from the school that creates genuinely disputed facts concerning the nature of their conduct.  A reasonable trier of fact could conclude that Brumbaugh's and/or Sliva's conduct relating to the removal and transportation of Tyler from the school and Brumbaugh's conduct relating to the illegal search of the Residence was shocking and sufficient to support a substantive due process claim.


C.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity on the individual procedural and  substantive due process claims.  As indicated above, there is not

sufficient evidence that shows that Sliva was involved in the illegal search of the Residence by Brumbaugh. However, there is sufficient evidence as to the conduct of Sliva and Brumbaugh relating to the removal of Tyler from school and Tyler's transportation by Brumbaugh to the Residence. Sliva and Brumbaugh have not shown that a reasonable official in their position would not have been aware that taking Tyler from school and transporting him to his home without his parents' consent would have violated the parents' due process rights. Brumbaugh has not shown that a reasonable official in his position would not have been aware that searching the Residence without the parents' consent would have violated the parents' due process rights. Thus, Sliva and Brumbaugh are not entitled to qualified immunity on the due process claims that relate to the removal and transportation of Tyler from school. Brumbaugh is not entitled to qualified immunity as to the due process claims that relate to the illegal search of the Residence. Sliva is entitled to qualified immunity as to due process claims that relate to the illegal search of the Residence. Therefore, based on the above, we deny Defendants' motion for summary judgment on the individual procedural and substantive due process claims brought against Brumbaugh and Sliva in regards to the removal and transportation of Tyler from school (Count III). We deny Defendants' motion for summary judgment as to the individual procedural and substantive due process claims brought against Brumbaugh as to the illegal search of the Residence (Count III). We grant Defendants' motion for summary judgment as to the individual procedural and substantive due process claims brought against Sliva as to the illegal search of the

Residence (Count III).

IV.  Individual State Law Claims

Defendants argue that they are entitled to immunity on the individual state law claims.  Defendants contend that they are immune from liability under 745 ILCS 10/2-201, which provides that "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  745 ILCS 10/2-201.  Plaintiffs argue that the court should apply 105 ILCS 5/24-24, which provides that in matters of discipline, teachers "stand in the relation of parents and guardians to the pupils," which could expose Defendants' to liability. *Id.*  However, school districts or local public entities are protected by 745 ILCS 10/2-201.  *Harrison v. Hardin County Community Unit School Dist. No. 1*, 758 N.E.2d 848, 851 (Ill. 2001); *Henrich v. Libertyville High School*, 712 N.E.2d 298, 300 (Ill. 1998).  Thus, Defendants are immune to suit on the individual state law claim for false imprisonment and indemnity and we grant Defendants' motion for summary judgment on the individual state law claims (Counts IV and V).

V.  *Monell* Claims

Defendants move for summary judgment on all the *Monell* claims.  For a Section 1983 *Monell* claim, a plaintiff must establish: "(1) an express policy that,

when enforced, causes a constitutional deprivation; or (2) that the constitutional injury was caused by a person with final policymaking authority." *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008); *see also Campbell v. Miller*, 499 F.3d 711, 720 (7th Cir. 2007)(stating that for a *Monell* claim a plaintiff must show that the misconduct resulted from "'(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority'")(quoting *McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir. 2000)). In regards to the First Amendment retaliation *Monell* claim, Plaintiffs argue that Hendricks was a policy-maker for the District. However, under Illinois law the decision whether to expel Tyler was ultimately controlled by the School Board. 105 ILCS 5/10-22.6(a); (d). Thus, Plaintiffs have not shown that Hendricks was a policy-maker and Plaintiffs have not pointed to an official policy or custom that caused Hendricks' conduct. *See Partee v. Metropolitan School Dist. of Washington Tp.*, 954 F.2d 454, 456 (7th Cir. 1992)(concluding that superintendent did not have final policy-making authority). Therefore, we grant Defendants' motion for summary judgment on the First Amendment retaliation *Monell* claim (Count I).

In regards to the Fourth Amendment *Monell* claim, Plaintiffs argue that Sliva was delegated policy-making authority as the principal and that the school district later ratified her actions. However, as indicated above, there is not sufficient evidence that shows that Sliva violated Plaintiffs' Fourth Amendment rights. Also, Plaintiffs have not pointed to sufficient evidence that shows that Sliva was delegated

policy making authority or that the search was done in accordance with an established policy or custom of the District.  *See Brandt v. Board of Educ. of City of Chicago*, 420 F.Supp.2d 921, 937 (N.D. Ill. 2006)(finding that principal was not a final policymaker).  Therefore, we grant Defendants' motion for summary judgment on the Fourth Amendment *Monell* claim (Count II).

In regards to the due process *Monell* claims, there is not sufficient evidence that shows that Sliva or Brumbaugh acted pursuant to a District policy or custom or were policy-makers.  Therefore, we grant Defendants' motion for summary judgment on the procedural and substantive due process *Monell* claims (Count III).


## CONCLUSION

Based on the foregoing analysis, we grant Plaintiffs' partial motion for summary judgment on the individual Fourth Amendment claim brought against Brumbaugh (Count II) and deny Plaintiffs' motion for summary judgment on the individual Fourth Amendment claim brought against Sliva (Count II).  We deny Defendants' motion for summary judgment on the individual Fourth Amendment claims brought against Brumbaugh (Counts II) and grant Defendants' motion for summary judgment on the individual Fourth Amendment claims brought against Sliva (Count II).  We deny Defendants' motion for summary judgment as to the individual procedural and substantive due process claims brought against Brumbaugh based on the illegal search of the Residence (Count III) and we grant Defendants' motion for summary judgment as to the individual procedural and substantive due

23

process claims brought against Sliva as to the illegal search of the Residence (Count III).  We deny Defendants' motion for summary judgment as to the individual procedural and substantive due process claims brought against Brumbaugh and Sliva as to the removal and transportation of Tyler from school (Count III).  We deny Defendants' motion for summary judgment on the individual First Amendment retaliation claim brought against Hendricks (Count I).  In addition, we grant Defendants' motion for summary judgment on the individual state law claims (Counts IV and V).  Finally, we grant Defendants' motion for summary judgment on all *Monell* claims (Counts I - III).


Samuel Der-Yeghiayan
United States District Court Judge


Dated:   October 22, 2008